v.

**DEPARTMENT FOR HUMAN RE-
SOURCES, COMMONWEALTH
of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 10, 1982.

Eric Tohtz, Western Kentucky Legal Services, Paducah, Ky., for appellants.

Daniel F. Egbers, Dept. for Human Resources, Frankfort, Ky., L.M. Tipton Reed, Reed & Reed, Mayfield, Ky., for appellee.

Before COOPER, McDONALD and VANCE, JJ.

COOPER, Judge.

This is an appeal from an order of the circuit court terminating the appellants' parental rights in their infant son, J.E.H. On appeal, the question is whether the trial court's judgment was clearly erroneous as a matter of law. KRS 199.603 et seq. On review, we reverse and remand.

The appellants' son, born on September 24, 1979, was placed in temporary custody with the appellee, Department for Human Resources, Commonwealth of Kentucky, on March 7, 1980, as a result of an ex parte emergency custody order issued by the Graves District Court. Such action resulted from the filing of a petition requesting that the child be declared dependent as a result of his parents' alleged lack of knowledge and skill to meet his needs.

On March 20th, a hearing was held on the appellants' motion to vacate the emergency custody order. At this hearing, evidence was presented that the child had failed to thrive physically. Specifically, evidence was presented that he had been subject to illness, and his parents had removed him from a hospital while he was still under a physician's care. Although there was no evidence of physical abuse, there was evidence that the mother did not know how to properly prepare the infant's formula, as well as evidence that the child had been left lying on one side for a length of time, causing a temporary flattening of one side of his head. Subsequent to this hearing, the child was ordered to remain in temporary custody. The parents were allowed to visit him for one hour per week.

On May 8th, a second hearing was held on the original dependency petition filed in the district court. The testimony at this hearing was substantially similar to that of the March 20th hearing, although there was evidence that the child's health was improving since his removal from his parents. And, there was testimony that the previously unsanitary conditions existing in the parent's home had improved. The district court extended the temporary custody order until June 5, 1980, at which time the appellee would submit its recommendations.

At the June 5th hearing, the district court approved the appellee's proposed recommendations and ordered the temporary custody order to continue until a total review, to be held on December 4. As part of the appellee's recommendations, the child's father was ordered to attend an alcohol abuse program. Further recommendations were approved with respect to the family's reduced income, as well as some eighteen problem areas relating to the infant's needs. The district court entered an agreed order increasing visitation hours to all day, and also unsupervised visitation hours every other week. That order was entered on December 26, although not officially signed until February 2, 1981.

In November of 1980, the appellee filed a petition in the circuit court to terminate the parental rights of the appellants. KRS 199.603. As a result of this petition, the

appellants were ordered to undergo psychological evaluations. A hearing was subsequently held at which witnesses for both parties appeared. The trial court then took the matter under advisement, requesting both parties to brief all matters at issue. The appellants requested the trial court to stay any decision in the matter until the birth of their second child, born in August of 1981, so they might be given the opportunity to show both the trial court and the appellee that they were able to care for an infant. Nevertheless, on August 27, 1981, the trial court entered findings of fact, conclusions of law, and an order terminating the parental rights of the appellants. The appellee sought to limit all visitation privileges. It is from such judgment that the appellants now appeal.

In its findings of fact, the trial court determined that the appellants had difficulty in properly caring for their child's physical needs and in maintaining a stable home. It found that the appellants' home environment, at least in the past, had been unsanitary and unhealthy. Although it did not find any evidence of abuse on the part of the appellants, it found that they were unresponsive to their child's needs, stressing their actions in removing him from a hospital prior to his medical release. At that time, the child was hospitalized for dehydration; a lopsided condition of his head; and an intolerance to his feeding schedule. And, in its findings of fact, the trial court identified ten additional problem areas, i.e., financial planning, meal preparation, family planning, infant formula, and alcohol abuse.

With respect to the appellants' specific abilities as parents, the trial court found that given their mental capacities—the father was classified as mildly retarded and the mother was classified as dull normal—both parents lacked critical abilities in caring for their son. Specifically, it found that the father's judgment and reasoning ability were questionable, and the mother had difficulty in separating her own values and judgments from those of her husband. In effect, the trial court determined that the appellants lacked appropriate parenting skills, resulting in neglect and mistreatment

of their son. It found that the child had substantially improved in both health and well-being since being placed in a foster home, and that the appellants had shown no willingness to change their health habits, living conditions, or general lifestyle. As such, the trial court found that the appellants had substantially and continuously neglected the immediate and ongoing needs of their infant son. Therefore, it held that the child's best interest would be served by terminating the parental rights of his parents. KRS 199.603(1)(b).

KRS 199.603 (effective until July 15, 1984) states in part as follows:

(1) In a proceeding involving a dependent, neglected or abused child ... the circuit court may terminate all parental rights ... and declare the child to be a ward of the state ... and if it is pleaded and proved by preponderance of the evidence in a private hearing that the termination is in the best interest of the child based on the existence of one (1) or both of the following conditions:

(a) The child has been abandoned; or

(b) The child has been substantially or continuously or repeatedly neglected or abused.

An abused or neglected child is defined in KRS 199.011(6) as:

... a child whose health or welfare is harmed or threatened with harm when his parent ... inflicts or allows to be inflicted upon the child, physical or mental injury to the child by other than accidental means; creates or allows to be created a risk of physical or mental injury to the child by other than accidental means; commits or allows to be committed an act of sexual abuse upon the child; willfully abandons or exploits such child; does not provide the child with adequate care and supervision; food, clothing and shelter; education; or medical care necessary for the child's well-being ....

As a court of review, this Court cannot set aside findings of fact of the trial court unless such findings are shown to be clearly erroneous. In *Bryant v. Kentucky Dept.*

*for Hum. Resources,* Ky.App., 548 S.W.2d 165 (1977), the Court held that in terminating parental rights, it is not necessary to prove that the child has been abused. Rather, it is sufficient that substantial evidence is presented to show that the child has been neglected as that term is defined in KRS 199.011. In making such a determination, the trial court must consider the factors enumerated in KRS 199.603, including the mental deficiency of either or both parents; specific acts of neglect or abuse; the ability of the parents to provide necessary care for the child; as well as the parents' willingness to adjust their conduct to further the best interests of the child. As set forth in KRS 199.603(1), the standard of proof for proving either abandonment or neglect is "by preponderance of the evidence."

Since this action has been tried, a new standard of proof in termination of parental rights actions has been mandated by the United States Supreme Court in *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The *Santosky* Court, in analyzing the nature of the parent/child relationship, held that evidence of neglect or abuse must be "clear and convincing" for there to be a termination of parental rights, given the vital interest of the parents in preventing the irretrievable destruction of their family life. It held that when the state attempts to destroy a weakened family bond, the parents must be provided with fundamental fair procedures, requiring the state to support its allegations by at least "clear and convincing evidence."

It is unclear whether *Santosky* is to have retroactive or prospective application. Nevertheless, given the serious nature of depriving a parent of all rights to his child, as well as the fact that here the alleged neglect appears to have involved specific isolated events in the past, this Court is of the opinion that the trial court should take a second look at the allegations filed by the appellee, and apply the new standard of "clear and convincing evidence" to the provisions of KRS 199.603 and KRS 199.011 et seq. Stated differently, we question whether there was clear and convincing evidence presented to the trial court to support a finding that the appellants' conduct and action constituted substantial, continuous and repeated neglect of their infant son. As such, the trial court is directed to carefully apply the new standard of proof to the evidence presented.

The judgment of the trial court is reversed and remanded to the trial court with directions that it try the case anew applying the new standard of proof set forth in *Santosky, supra.*

McDONALD, J., concurs.

VANCE, J., dissents.

VANCE, Judge, dissenting.

Even if *Santosky, supra,* should be accorded retroactive effect, which is doubtful, the evidence to support the finding of the trial court is clear and convincing. I would affirm the judgment of the trial court.